IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEANNIE WELLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 CV 5745 |
| | ) | |
| CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, et al, | ) ) ) ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

### ORDER

For the reasons set forth in the statement below, defendant the Chief Judge's motion for summary judgment [110] is granted. Having granted summary judgment on the only federal claims in this case, the Court declines to exercise supplemental jurisdiction over the battery claim brought against Shirley McElroy-Smith. Enter Judgment Order. Civil case terminated.

### STATEMENT

Jeannie Wells works for the Cook County Department of Juvenile Probation and Court Services ("JPD") as an adjudicator.[1] Def.'s Statement of Material Facts (DSMF) ¶ 5. She claims that during 2016, her supervisors harassed her and discriminated against her on account of her race, and then retaliated against her when she complained about it.

JPD adjudicators attend court, record what happens there, and update JPD's case management system. *Id.* at ¶ 6. They are either assigned to a particular courtroom, or "calendar," or to "float" among various courtrooms where there is a need for their presence. *Id.* Wells was, at

---

[1] Wells did not file the fact statement required under Local Rule 56.1, so the Court adopts the defendants' version of events. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) (concluding that district court did not abuse its discretion "in adopting [defendants'] version of events" where plaintiff failed to comply with LR 56.1); *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (gathering cases on court's discretion to require compliance with rule 56.1 and considering "*only* the facts (and differences drawn from them) presented in accordance with Local Rule 56.1) (emphasis in original). This discretion is undiminished when a litigant is pro-se. *Wilson v. Kautex, Inc.*, 371 Fed. Appx. 663, 664 (7th Cir. 2010). It is not unusual for litigants to deviate in some manner from the particulars of LR 56.1, especially pro-se litigants, so the Court is usually inclined to take a lenient approach. But it is impossible to do so when, as here, the plaintiff has neglected to file the required fact statement altogether. The Court also notes that the plaintiff was provided with the statement required by Local Rule 56.2 regarding the requirements to respond to a summary judgment motion. ECF No. 113.

one point, assigned to calendar 63. *Id.* at ¶ 7. On March 19, 2015, she asked to be reassigned, but her supervisors declined to do so until a replacement could be found for Calendar 63. *Id.* at ¶ 8. Then, on March 26, 2015, Wells' office was given to an incoming supervisor. That office had been located near other supervisors' offices. Wells' new office, which was private and had a door like her old one, was located in closer proximity to other floating adjudicators. *Id.* at ¶¶ 9-10. On June 30th, 2015, Wells was removed from calendar 63 as she had requested and became a floating adjudicator. *Id.* at 11.

On July 6, 2015, Wells had a dispute with her supervisor regarding her assignment. In a memorandum, Wells' supervisor informed Deputy Chief William Pieroth that Wells had refused to "leave calendar 63 and report to calendar 59." *Id.* at ¶ 12. The following day, Pieroth gave Wells a "coaching and counseling regarding her refusal to comply with the assignment." *Id.* at ¶ 13.

Almost a year later, in May 2016, Wells and her supervisor again had a dispute about her assignment. The supervisor told her to report to calendar 63, but Wells refused the assignment and then left work without authorization. *Id.* at ¶ 16. The incident is memorialized in a memo from her supervisor to Pieroth, which explains that the assignment to calendar 63 was an effort to accommodate Wells after she refused an assignment to calendar 57. *Id.* at ¶ 17. Pieroth convened a "pre-disciplinary meeting" a few days later with Wells and her union representatives, and Wells was given an opportunity to rebut the disciplinary charge. She called her supervisor as a witness, who testified consistently with his memorandum. On May 27, 2016, Wells was given a five-day suspension for insubordination and unprofessional conduct. *Id.* at ¶ 22. Wells then filed a charge with the EEOC on July 7, 2016, alleging race discrimination and retaliation. *Id.* at 25.

Wells contends that her reassignment as a floater, being moved to a different office, and the suspension were motivated by racism. First Amended Complaint ¶ 25. She maintains that other employees also refused assignments to calendar 63 but were not disciplined; several of these employees are, like Wells, African American. Wells Dep. 161:18-164:15.

In its motion for summary judgment, OCJ argues that Wells' reassignment and the office move are not adverse actions, and that the five-day suspension was neither discriminatory nor retaliatory.[2] It also argues that Wells waived her retaliation claim by only raising it in her response brief. Wells' brief opposing summary judgment did not respond to these arguments. The Court agrees with OCJ and concludes that it is entitled to summary judgment.

Wells' task on summary judgment is to demonstrate that there is evidence that "would permit a reasonable factfinder to conclude that [her] race, ethnicity, sex, religion or other

---

[2] OCJ says that the complaint only alleges a single count of discrimination, and not retaliation, but it confuses counts with claims. *See Florek v. Village of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011) ("[A] claim is the aggregate of operative facts which give rise to a right enforceable in the courts.") (internal quotation marks omitted). A count is merely the legal theory upon which a plaintiff intends to pursue his or her claim, and is not required to be plead. The complaint alleges that Wells complained of racial discrimination "since May 2016 and before" and then suffered the alleged adverse actions. FAC ¶ 11. That she did not include a count for retaliation does not alter the fact that she claimed the OCJ had retaliated against her.

2

proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "In a discrimination case, a materially adverse employment action is one which visits upon a plaintiff a significant change in employment status," which can involve "the employee's current wealth, his career prospects" or alterations that are "humiliating, degrading, unsafe, unhealthy[.]" *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (cleaned up). For retaliation claims, adverse action is not limited to actions that "affect the terms and conditions of employment" but encompasses those that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & S.F.R. Co. v. White*, 562 U.S. 170, 174 (2011).

Wells' claims fail as a matter of law. Neither Wells' office move nor her reassignment as a floating adjudicator qualify as adverse action. As for her suspension, she has failed to adduce any evidence that similarly situated white employees received more favorable treatment—and several of her comparators—who were allegedly treated better than she—are in the same protected class, demonstrating that any disparity in treatment was not due to racial discrimination. Finally, no reasonable jury could find in her favor on her undeveloped retaliation claim.

Wells was clearly unhappy with having her office moved, but "[n]ot everything that makes an employee unhappy is an actionable adverse action." *Murray v. Chicago Transit Authority,* 252 F.3d 880, 888 (7th Cir.2001). Nothing in the record suggests that the office move was anything more than a mere inconvenience, and a trifling one at that. The office was on the same floor as her old one, and was located among those of other adjudicators. DSMF ¶ 10. Wells contends that her old office was more desirable because it was in a "secure area," but the new office, like the old one, was private and had a door. Resp. at 3, ECF No. 116.[3] Even if there was a difference in the level of security between the two offices (a fact not established in the record), Wells does not respond to OCJ's argument that such a move does not constitute adverse action or explain why she should have a more desirable office than other similarly situated adjudicators. Wells may have preferred her old office, but denial of her preference does not make for an adverse action under Title VII.

The same goes for her reassignment as a floating adjudicator. "[C]ases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience" can be actionable adverse action. *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004). But Wells does not say that her reassignment as a floating adjudicator (prompted by her own request to be removed from calendar 63) did anything to diminish her career prospects nor that it entailed any substantive difference in her responsibilities. In fact, she does not address this issue at all in her response brief, and she only raises it in her complaint by alleging that she was "denied … favorable job assignments." FAC ¶ 25. Nowhere does she explain why being a floating adjudicator is a more or less favorable assignment than being assigned to a particular court calendar. As far as the Court can tell, the change did not effect any material alteration to the terms of her employment.

---

[3] The pagination refers to the page numbers printed in blue at the top of the page since Wells' response brief is not otherwise paginated.

Wells' suspension qualified as adverse action, but she has not demonstrated it was motivated by her race, so that claim also fails as a matter of law. Wells says that several employees engaged in similar conduct (refusing an assignment to calendar 63) but were not disciplined, but four of them are African American. DSMF ¶¶ 29. It appears there may be some favoritism at play, but not racial discrimination; thus, Wells has no Title VII claim. *See Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005) (holding that plaintiff failed to establish a prima facie case because comparator was a member of the same protected class). Wells also failed to respond to OCJ's argument that she was suspended for failing to meet expectations—while she emphasizes her long record of positive performance reviews, she does not address OCJ's contention that she was suspended for refusing an assignment and then leaving work without permission.

That leaves Wells' retaliation claim. OCJ contends that the claim is completely new and cannot be asserted in her response brief, so it is entitled to summary judgment on this claim. It is not quite true that Wells never raised a retaliation claim (see note 2, *supra*), but she did nothing to develop it until her response brief. Wells' amended complaint makes one conclusory reference to retaliation, saying that all the above events occurred due to "retaliation for complaining of the discriminatory actions of defendants." FAC ¶ 7. This claim would not have survived a motion to dismiss; she did not allege what protected activity she engaged in, nor indeed anything at all to support that bare-bones allegation. In her response brief to OCJ's summary judgment motion, Wells suggests that the retaliation was occasioned by IDHR complaints filed in 2002 and 2009, Resp. at 1-2, but she cannot now amend her complaint in her response brief. *See Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). Moreover, OCJ maintains that Wells was disciplined because she left work without authorization and refused an assignment, and so her employer has a legitimate non-discriminatory reason for suspending her. Wells offers nothing in her response brief that creates a factual dispute on that point. Thus, no reasonable jury could conclude that Wells was disciplined—in 2016—because of the IDHR complaints she filled—years earlier—in 2002 and 2009.

OCJ's motion for summary judgment is accordingly granted, but one claim against defendant Shirley McElroy Smith remains. Wells alleges that on January 21, 2016, Smith "physically assaulted and harassed" her. This is a tort claim, in support of which Wells invokes state law theories of battery, assault, and intentional infliction of emotional distress. There is no diversity of citizenship between Wells and Smith, but the Court has exercised supplemental jurisdiction over the claim pursuant to 28 U.S.C. § 1367(a). See ECF No. 62 (order denying motion to dismiss this claim for lack of subject matter jurisdiction).

Having disposed of the claims over which it had original jurisdiction, however, the Court may decline to exercise supplemental jurisdiction over Wells' state law tort claims, 28 U.S.C. § 1367(c)(3). Indeed, there is a presumption in favor relinquishing jurisdiction of such claims once the claims that for the basis for original federal jurisdiction have been dismissed. *Jaimes v. Cook County*, 2022 WL 2806462 (7th Cir. 2022). In some "unusual cases," however, "judicial economy, convenience, and comity" may counsel retaining jurisdiction. *Wright v. Assoc. Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). One such unusual case might be one where the statute of limitations has run on the state law claim during the pendency of the federal proceedings, another might arise where the federal court has expended significant resources in resolving a claim. Neither

4

consideration warrants retention of jurisdiction over Wells' tort claim. The statute of limitations on the claim has been tolled during the pendency of this case, so a dismissal works no prejudice against her in that respect. 28 U.S.C. § 1367(d); *see Williams Electronic Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (noting that section 1367(d) "explicitly tolls the statute of limitations for 30 days after dismissal of a supplemental claim."). Nor will dismissal render the time spent litigating Wells' tort claim in this case go for naught; Wells was afforded full discovery and the case, if refiled in state court, should be ready to set for trial. The general rule therefore applies, and the Court will relinquish jurisdiction over the tort claim against defendant Smith. The tort claim is accordingly dismissed without prejudice to her reassertion of that claim, within 30 days of this dismissal, in a state court of competent jurisdiction.

   This is a final order. If Plaintiff seeks to appeal the final judgment entered in this matter, she must (absent a basis to extend the time to appeal) file a notice of appeal with this Court within thirty days of the entry of the Judgment on the docket. *See* Federal Rule of Appellate Procedure 4(a). If Plaintiff appeals, she will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If Plaintiff seeks leave to proceed *in forma pauperis* on appeal so that she may pay the appellate filing fee in installments, she must file a motion seeking leave to do so in this Court. *See* Fed. R. App. P. 24(a)(1). Any such motion must include sufficient information to support the claim of indigency and a statement of the intended grounds for appeal.

Dated: September 1, 2022                   John J. Tharp, Jr.
                                      United States District Judge